# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF ILLINOIS
# URBANA DIVISION

| | |
|---|---|
| **ROBERT SCROGGINS, JR.,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 06-2128 |
| ) | |
| **CITY OF KANKAKEE**, a municipal ) | |
| corporation; **LIEUTENANT DAVID SKELLY;** ) | |
| **SERGEANT AVERY IVEY;** and ) | |
| **PATROLMAN TIMOTHY KREISSLER,** ) | |
| in both their official and individual capacities; ) | |
| ) | |
| Defendants. ) | |
| ) | |

## OPINION

On June 28, 2006, Plaintiff Robert Scroggins, Jr., filed his Complaint (#1) in this matter pursuant to 42 U.S.C. § 1983 alleging false arrest and excessive force in effectuating his arrest.[1] On June 1, 2007, Defendants filed a Motion for Summary Judgment (#20). For the reasons that follow, Defendants' Motion for Summary Judgment is GRANTED.

## FACTS[2]

Robert Scroggins is an employee of Kankakee Auto Mart, a business which sells and finances

---

[1] Count III of Plaintiff's complaint alleging assault and battery was dismissed by this court in an Opinion (#15) entered October 10, 2006.

[2] Plaintiff has failed to respond to Defendants' Statement of Undisputed Facts. Accordingly, this court considers those facts conceded for purposes of summary judgment. See C.D. Ill. L. R. 7.1(D).

automobiles. As an employee of Kankakee Auto Mart, Scroggins would repossess vehicles when purchasers defaulted on their payment obligations. Sharitha Stroud, with her mother, purchased a 1994 Chevrolet Suburban from Kankakee Auto Mart. Pursuant to the purchaser agreement entered into between Stroud and Kankakee Auto Mart, if payment was late by even one day, Kankakee Auto Mart could repossess the vehicle On January 27, 2005, Scroggins was told by his father, the owner of Kankakee Auto Mart, to repossess the Suburban purchased by Stroud. Scroggins was given a bill of sale, the purchaser's agreement, the buyer's guide, and a set of keys to the vehicle. Scroggins was not given any documentation indicating that Stroud was behind in her payments. Scroggins then went to the Kankakee County Communications Center (KanCom), the police communications center for the City of Kankakee, and informed the city of his intent to repossess Stroud's vehicle. Scroggins also provided KanCom with a copy of the purchaser's agreement, the bill of sale, a copy of his driver's license, and his business card. Scroggins did not provide KanCom with any information to establish Stroud was behind in her payments, nor did he obtain a writ of replevin prior to repossessing the vehicle.

On February 1, 2005, Scroggins located Stroud's vehicle in a shopping mall parking lot. The vehicle was unoccupied at the time Scroggins found it. Scroggins checked the vehicle identification number on the vehicle and confirmed that it was the vehicle he was told to repossess. Scroggins then used the keys he was given to enter the vehicle and attempted to start it. Scroggins was unable to start the car, so he called Denver Taylor for assistance. Taylor is a mechanic for Kankakee Auto Mart and assists in repossessing vehicles. Taylor arrived at the scene within a few minutes and opened the hood to examine the engine. While Taylor examined the engine, Scroggins remained in the vehicle. Taylor could not determine why the vehicle would not start, and Scroggins therefore called for a tow truck.

Scroggins remained in the driver's seat because he believed he needed to stay in the car or he would give up possession of the vehicle.

Stroud later exited a store in which she had been shopping with Albert Pendleton. Stroud and Pendleton observed that the hood of the vehicle was up and Scroggins was seated in the car. Pendleton recognized Scroggins and Taylor as employees of Kankakee Auto Mart. Stroud walked over to Scroggins and began yelling at him. An argument ensued, and Pendleton tried to calm Stroud down. Stroud indicated she would make her payments the next day. Stroud also tried to pull Scroggins out of the car, and Pendleton tried to push him out from the passenger side. Scroggins resisted her efforts to remove him. Scroggins then called KanCom and requested police assistance. Scroggins testified in his deposition that he called the police to keep the peace. Taylor also called the police and testified at his deposition that the situation was "hostile."

Officer Timothy Kreissler of the Kankakee Police Department was dispatched to the scene. Lieutenant David Skelly and Sergeant Avery Ivey arrived at the scene within a few minutes. Kreissler did not observe any arguments when he arrived, but Skelly testified that there was a "a lot of arguing and yelling" when he arrived. Ivey testified that officers are trained to stand by and keep the peace during a repossession unless the peace is being breached. Ivey testified that when he arrived he saw Taylor standing near the vehicle with a big flashlight in his hand. Ivey also observed people yelling at each other. Ivey did not want Taylor to strike the other officers with the flashlight, so he ordered Taylor to stand in the front of the vehicle and put the flashlight down. Taylor testified that Ivey and Kreissler kept the peace by trying to prevent Stroud and Pendleton from forcibly removing Scroggins from the vehicle. Stroud indicated that she had made arrangements with Kankakee Auto Mart to delay making further payments until some mechanical problems with the vehicle had been fixed. Skelly

further testified that Scroggins was "agitated or upset" when Skelly spoke with him.  Skelly stated he asked Scoggins to get out of the car, but Scroggins refused because he did not want to give up possession of the vehicle.  Skelly also asked Scroggins to show him the paperwork for the repossession.  Scroggins produced the sales contract but no court order regarding the repossession nor documents indicating Stroud was behind on payments.

Skelly ordered Scroggins out of the vehicle, and Scroggins responded that he could not get out because he had possession of it.  Scroggins called his father while he was speaking with police. Skelly also spoke with Scroggins' father and believes he told him that Scroggins would be arrested if he did not leave the vehicle.  Scroggins' father told Scroggins not to leave the vehicle.  Stroud entered the vehicle through the passenger side door while officers were speaking to Scroggins in an attempt to remove the face plate from the stereo which she had installed in the vehicle.  Scroggins took the face off of the stereo.  Skelly ordered Scroggins to release the face plate to Stroud, and Scroggins refused.  Scroggins testified that officers told him four times to exit the vehicle and he refused.

The final time, Skelly told Scroggins to exit the vehicle by the count of three or he would be arrested.  Skelly counted to three, then Skelly and Kreissler grabbed Scroggins's arm and pulled him from the vehicle.  Scroggins is approximately six feet tall and weighs 500 to 520 pounds.  Scroggins was then placed against the back of the driver's side of the vehicle.   Skelly testified this was necessary to control Scroggins while completing the arrest.  Scroggins states that the officers told him to stand against the vehicle, but he could not do so because of his size.  Scroggins testified that Skelly then pressed his forearm against Scroggins' neck to place his head against the window of the vehicle and held him like that until he was handcuffed.  Ashley Hart, who was present at the scene, testified

in her deposition that she saw one of the officers grab Scroggins by the neck and pull him out of the car, then push his head against the glass of the vehicle. Scroggins testified this resulted in a cut on his forehead. Hart also testified that she recalled one of the officers pulling out a baton or flashlight and pressing it against Scroggins' neck. Two sets of handcuffs were used due to Scroggins' size. Scroggins testified that he informed the officers that the handcuffs were too tight, but the officers informed him they could not be loosened and he would not be in them for long. Scroggins also testified that Skelly made reference to a lawsuit Scroggins' father had previously filed against City of Kankakee police officers.

Scroggins was then walked to Kreissler's squad car to be transported to the Kankakee County Jail. Scroggins testified that the Skelly and Kreissler "forcibly put [him] in the vehicle" and he had to lay on his cuffs until he got to the jail. Scroggins testified that he asked Kreissler if he could loosen the cuffs, to cuff him in front, or help him sit in a comfortable position. Kreissler said no and that the cuffs would be off in a minute. It took about four to five minutes to get Scroggins to the jail after he was placed in the car. Scroggins testified that when they arrived at that station, Kreissler "grabbed a hold of [his] arm again and was mainly forcibly trying to get me out of the vehicle." Scroggins indicated it was difficult for him to get out of the car due to his size.

Stroud signed a complaint against Scroggins for criminal trespass to property. At the jail, Scroggins was provided with a notice to appear on the charge of criminal trespass to property and was released. Scroggins went to St. Mary's hospital the following day and an examination indicated he had a muscle spasm in his neck and had redness around both of his wrists. Scroggins testified that when he appeared at his designated court date there was no charge against him.

ANALYSIS

Summary judgment is granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). In ruling on a motion for summary judgment, the court must decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial. Waldridge v. American Hoechst Corp., 24 F.3d 918, 920 (7th Cir. 1994). In reaching this decision, the court must consider the evidence in the light most favorable to the party opposing summary judgment. Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59 (1970). The burden of establishing that no genuine issue of material fact exists rests with the movant. Jakubiec v. Cities Serv. Co., 844 F.2d 470, 473 (7th Cir. 1988).

A.  False Arrest Claim

Scroggins first asserts that Defendants Skelly and Kreissler lacked probable cause for his arrest in violation of his Fourth Amendment rights. "Probable cause to arrest is an absolute defense to any claim under Section 1983 against police officers for wrongful arrest." Mustafa v. City of Chicago, 442 F.3d 544, 547 (7th Cir. 2006). "Police officers have probable cause to arrest an individual when the 'facts and circumstances within their knowledge and of which they have reasonably trustworthy information are sufficient to warrant a prudent person in believing that the suspect had committed' an offense." Mustafa, 442 F.3d at 547, quoting Kelley v. Myler, 149 F.3d 641, 646 (7th Cir. 1998). Probable cause is evaluated from the perspective of a reasonable officer in the position of the arresting officer rather than based upon how an omniscient observer would perceive the facts. Mustafa, 442 F.3d at 547. Furthermore, even if there is insufficient probable cause to justify an arrest, qualified immunity protects officers "performing discretionary functions from civil

liability so long as their conduct does not violate clearly established statutory or constitutional rights that a reasonable person would know about." Mustafa, 442 F.3d at 548. To defeat this defense, Scroggins must demonstrate his rights were violated and the law concerning his asserted right was clearly established at the time the challenged conduct occurred. Mustafa, 442 F.3d at 548. This court must then determine whether a reasonably competent officer would know that the conduct was unlawful in the situation he confronted. Mustafa, 442 F.3d at 548. Because Scroggins has a right to be free from an arrest lacking in probable cause and that right is clearly established, this court must determine whether a reasonable officer would believe it was lawful to arrest him.

This court finds Defendants Skelly and Kreissler are entitled to qualified immunity on Scroggins' false arrest claim because a reasonable officer could have determined that Scroggins disobeyed a lawful police order. Pursuant to Illinois law, "[a] person who knowingly resists or obstructs the performance by one known to the person to be a peace officer . . . of any authorized act within his official capacity commits a Class A misdemeanor." 720 Ill. Comp. Stat. 5/31-1(a). The refusal of a defendant to exit his vehicle despite the order of a police officer has been found to be conduct sufficient to justify a conviction for violating this statute. See People v. Synnott, 811 N.E.2d 236, 241 (Ill. App. Ct. 2004). In the instant case, there is no dispute that officers ordered Scroggins out of the vehicle four times and Scroggins refused to exit the car. Thus, the only issue before this court is whether Scroggins could lawfully be asked to exit his vehicle under the circumstances presented in the instant case.

Pursuant to Illinois law, a party may take possession of collateral "without judicial process, if it proceeds without breach of the peace." 810 Ill. Comp. Stat. 5/9-609(b)(2). Illinois courts have construed the phrase "breach of the peace" to mean "conduct which incites or is likely to incite

immediate public turbulence, or which leads to or is likely to lead to an immediate loss of public order and tranquility." Chrysler Credit Corp. v. Koontz, 661 N.E.2d 1171, 1173 (Ill. App. Ct. 1996). Furthermore, violent conduct is not necessary; rather, "the probability of violence at the time of or immediately prior to the repossession is sufficient." Koontz, 661 N.E.2d at 1173. The undisputed facts in the instant case demonstrate that there was a breach of the peace. Both Scroggins and Taylor testified that they contacted the police because they needed assistance in keeping the peace. Taylor testified that Stroud and Pendleton were pushing and pulling Scroggins to get him out of the car. The undisputed deposition testimony also indicates that Stroud and Scroggins were arguing. Thus, there is no dispute that Scroggins proceeded with the repossession without a court order and with a breach of the peace. Accordingly, Scroggins could not lawfully repossess the vehicle and officers could lawfully order Scroggins out of the vehicle. When Scroggins refused four times to exit the vehicle, a reasonable officer would believe that he had probable cause to arrest Scroggins for disobeying a lawful police order. According, Defendants Skelly and Kreissler are entitled to qualified immunity on Scroggins' claim of false arrest and summary judgment is appropriate on this claim.

### B. Excessive Force Claim

Scroggins further alleges that Defendants Skelly and Kreissler used excessive force when they pulled him from the vehicle, placed his head against the vehicle, handcuffed him too tightly and when they placed him in the squad car. In determining whether the amount of force used to effect an arrest is unreasonable, this court is to look at the totality of the circumstances surrounding the incident. Sallenger v. Oakes, 473 F.3d 731, 739 (7th Cir. 2007). The factors which this court is to consider are "'the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'"

Sallenger, 473 F.3d at 739, quoting Graham v. Connor, 490 U.S. 386, 396 (1989). Furthermore, the facts and circumstances are be "'judged from the perspective of a reasonable officer on the scene.'" Sallenger, 473 F.3d at 740, quoting Graham, 490 U.S. at 396.

After viewing the facts in the light most favorable to Scroggins, this court finds that, due to Scroggins' size, the amount of force used by the officers to extricate Scroggins from the car and to bring him under control was not unreasonable. As discussed above, Skelly ordered Scroggins out of the vehicle several times and Scroggins refused to do so. Officers were required to use additional means to secure Scroggins after he exited the vehicle due to his size. Furthermore, because Scroggins substantially outweighed both officers, Skelly and Kreissler were faced with a situation where it was more difficult to assert and maintain control over Scroggins. As concerns Scroggins' claim of tight handcuffs, Scroggins was only placed in the handcuffs for a short period of time and suffered minimal, if any, injury. Therefore, this court concludes that this combination of allegations does not give rise to claim of excessive force. See Tibbs v. City of Chicago, 469 F.3d 661, 666 (7th Cir. 2006).

Furthermore, this court finds that Skelly and Kreissler are entitled to qualified immunity because the right to be free from the force exerted by the officers was not "clearly established" at the time of the incident. Sallenger, 473 at 741. Scroggins must demonstrate the existence of the clearly established right by: "(1) pointing to a closely analogous case that established a right to be free from the type of force the police officers used on him; or (2) showing that the force was so plainly excessive that, as an objective matter, the police officers would have been on notice that they were violating the Fourth Amendment." Clash v. Beatty, 77 F.3d 1045, 1048 (7th Cir. 1996). In the instant case, Plaintiff has cited no closely analogous case to the circumstances presented here. Furthermore,

the amount of force used by the officers was not "plainly excessive." As discussed above, the officers were faced with a situation where Scroggins was refusing to obey police orders and the officers had difficulty asserting control over Scroggins due to his size. Based upon the unique facts of this case, this court cannot conclude that the actions taken by Skelly and Kreissler were plainly excessive. Thus, Skelly and Kreissler are entitled to qualified immunity on Scroggins' excessive force claim.

### C.  Claim Against Defendant Ivey

Scroggins further brings a claim against Defendant Ivey for failing to intervene in the situation and prevent the actions of Skelly and Kreissler. "'[A]n officer who is present and fails to intervene to prevent other law enforcement officers from infringing the constitutional rights of its citizens is liable under § 1983 if that officer has reason to know: (1) that excessive force was being used, (2) that a citizen has been unjustifiably arrested, or (3) that any constitutional violation has been committed by a law enforcement official; *and* the officer had a realistic opportunity to intervene to prevent the harm from occuring." Abdullahi v. City of Madison, 423 F.3d 763, 774 (7th Cir. 2005), quoting Yang v. Hardin, 37 F.3d 282, 285 (7th Cir. 1994) (emphasis in original). As discussed above, this court finds that Scroggins was not unlawfully arrested, nor did Officers Skelly and Kreissler use excessive force in bringing Scroggins under control. Therefore, there is also no basis for liability on the part of Defendant Ivey for failing to intervene.

### D.  Monell Claim

Scroggins has also named the City of Kankakee as a defendant in this matter. Pursuant to Monell v. New York City Dept. of Social Servs., 436 U.S. 658, 691 (1978), a municipality cannot be held liable under a theory of respondeat superior under § 1983. Rather, a municipality only violates § 1983 when: (1) there is an express policy that, when enforced, causes a constitutional deprivation;

(2) there is a widespread practice that although not authorized by written law and express policy, is so permanent and well-settled as to constitute a custom or usage with the force of law; or (3) there is an allegation that the constitutional injury was caused by a person with final decision policymaking authority. Calhoun v. Ramsey, 408 F.3d 375, 379 (7th Cir. 2005). The only evidence offered by Scroggins in support of his Monell claim is that Skelly made a remark about a lawsuit Scroggins' father had previously filed against Kankakee police officers. A single remark made by an officer who does not have final policymaking authority is insufficient to establish liability on the part of the municipality. Accordingly, summary judgment is appropriate in favor of the City of Kankakee.[3]

IT IS THEREFORE ORDERED:

(1) Defendants' Motion for Summary Judgment (#20) is GRANTED.

(2) The final pretrial conference set for September 21, 2007, at 1:30 p.m. and jury trial scheduled to begin October 1, 2007, are VACATED.

(3) This case is terminated.

ENTERED this 16th day of August , 2007.

s/ Michael P. McCuskey
MICHAEL P. McCUSKEY
CHIEF JUDGE

---

[3] Furthermore, because a suit against an officer in his official capacity is the same as a suit against a municipality, the official capacity claims against Defendants Skelly, Ivey and Kreissler are dismissed as well. See Luck v. Rovenstine, 168 F.3d 323, 325 (7th Cir. 1999).